# Supreme Court of Texas

═══════════

No. 22-0393

═══════════

Unity National Bank,

*Petitioner,*

v.

John Scroggins,

*Respondent*

═══════════════════════════

On Petition for Review from the
Court of Appeals for the First District of Texas

═══════════════════════════

*~ and ~*

═══════════

No. 22-0394

═══════════

In re Unity National Bank,

*Relator*

═══════════════════════════

On Petition for Writ of Mandamus

═══════════════════════════

JUSTICE YOUNG, concurring in the denial of the petition for review
and the petition for writ of mandamus.

In this rather unusual contractual dispute, the chief goal of Unity

National Bank (petitioner and relator in this Court) is not for us to resolve

the appeal's underlying merits. Instead, Unity primarily asks us to vindicate its *chance* to appeal. Unity claims that it was wrongly deprived of its right to appeal a final judgment of which it had no notice until its opportunity to invoke appellate jurisdiction had expired.

Here is the relevant timeline. The trial court granted final summary judgment in favor of respondent and real party in interest Scroggins on May 21, 2020. Unity, however, claims that it first received notice of that final judgment on June 23, 2020—more than a month after it was signed. It received notice then, it says, because Scroggins's counsel notified Unity's counsel on that date (shortly after the thirty-day clock had run).[1] Unity then moved to reinstate and extend post-judgment deadlines under Rule 306a, asking the trial court to "find[] that [Unity] received notice of the Court's May 21, 2020 final judgment on June 23, 2020."

Simple enough to resolve, one might think. But not so fast. After Unity claimed that it did not receive timely notice, counsel for Scroggins contacted the district clerk to verify whether (and when) notice was sent. Scroggins's counsel revealed that it took five days for *her* to receive notice after the trial court signed the judgment—in other words, she got it (electronically) on May 26, 2020. The district clerk's office sent this response: "The E-Notice records indicate that the email notices were

---

[1] Nothing suggests any impropriety from Scroggins's counsel, of course. If a judgment is signed and the prevailing party receives notice, that party would likely assume that the other side did too. Waiting to see if the other side files post-judgment motions or a notice of appeal seems reasonable, and when no such filings are forthcoming, an attorney could reach out to opposing counsel with respect to effectuating the final judgment. As far as I can tell, that is what happened here, and I do not imply anything else.

sent on 5/21/20 to both Plaintiff and Defendant attorneys." No records were attached and no reason for the discrepancy among the three alleged dates—May 21, May 26, and June 23—was given. Unity, of course, questioned this lack of documentation.[2]

The parties proceeded to Unity's Rule 306a hearing. Unity referenced its rebuttal declaration, which provided a more detailed description of how Unity had conducted its search to verify that it had not received notice. Unsurprisingly, Unity's declarations alleged a thorough search for timely notice that came up empty. Scroggins proffered no refuting evidence except counsel's own receipt on May 26 (which said nothing about Unity's notice) and the district clerk's "confirmation" that notice was sent on May 21 (which even Scroggins had not received).

Counsel for Scroggins admitted that "obviously at this point [she] d[id not] have th[e] records" to show anything else about notice to Unity, but had filed an "open records request" to get them.[3] "[O]nce I receive

---

[2] Unity observed that "the E-Notice records . . . have not been provided to either party. Thus, we have no way of determining whether such E-Notice records actually demonstrate electronic notice of the final judgment was sent to, or received by [Unity's counsel] on May 21, 2020, or within 20 days." Unity added that the district clerk's "statement is undercut by [Scroggins's] own evidence. For example, [Scroggins's] counsel points to an electronic notification email of the final judgment she received on May 26th (not May 21st), which lends support to the notion that electronic notice simply was not sent to, or received by, [Unity's counsel]. And, apparently, [Scroggins's] counsel did not believe [the district clerk's] reference to the E-Notice records was sufficient because she requested 'whatever documentation [was] available to show enotice was sent to [Unity's counsel].'"

[3] At the hearing, Scroggins's counsel also alleged a "pattern" in which prior counsel for Unity (the attorney to whom notice would have been directed) had been less than punctilious regarding various aspects of the case. The district court deemed that allegation, even if true, as "irrelevant to what I determine

the records from the district clerk I may be filing a motion for reconsideration," she continued.

The trial court then orally granted Unity's motion to find June 23 as the date on which Unity had received notice. The court noted the possibility of the motion for reconsideration that Scroggins's counsel had raised.[4] (No such motion has ever been filed, at least according to the record before us.)

Presumably that would have solved the problem. Not so fast. Under our appellate rules, "[a]fter hearing the [Rule 306a] motion, the trial court *must sign* a written order that finds the date when the party or party's attorney first either received notice or acquired actual knowledge that the judgment or order was signed." Tex. R. App. P. 4.2(c) (emphasis added). The trial court did not do so after the hearing. Unity repeatedly requested that the trial court perform this ministerial and mandatory duty by filing draft orders for a signature, but the trial court never signed one.

Unity eventually turned to the court of appeals. It first filed a notice of appeal, but the appellate court responded with a letter stating that, under Rule 4.2, its jurisdiction depended on having a *written* order from the trial court fixing the date of notice.[5] So Unity asked the court of

today," so Unity's counsel withdrew its planned rebuttal of the accusations.

[4] "[B]ased upon the current state of the record, I will grant the motion, and [opposing counsel] has indicated she may file a motion for reconsideration when additional evidence comes in. . . . The motion is granted at this time."

[5] I doubt that this procedural rule should be given such jurisdictional force. Appellate jurisdiction requires a timely notice of appeal, of course. But is the finding about when Unity received notice *itself* jurisdictional—even to the

4

appeals to stay the appeal and grant mandamus relief that would direct the trial court to sign the necessary order. However, the court of appeals denied mandamus without explanation, having also dismissed the appeal for the lack of the very order that mandamus would have compelled.

Unity then came to this Court with a petition for review (No. 22-0393) and a petition for writ of mandamus (No. 22-0394). In this Court, the parties wholly abandoned a notice date of May 26. Scroggins argued for a notice date of May 21. Unity continued to argue (as it always has) that it did not receive notice until June 23, the date that the trial court orally found when it granted Unity's Rule 306a motion.

At least at first glance, the case had all the hallmarks of the circumstance we recently warned about: "Texas appellate courts should not again be presented with a case in which a court of this State has prevented a party from taking an appeal to which the party has a clear right." *In re Whataburger Rests. LLC*, 645 S.W.3d 188, 198 n.41 (Tex. 2022). Indeed, "our oft-repeated position" is that "a party should not lose the right to appeal because of an 'overly technical' application of the

_____

point that whether the finding is in writing rather than orally announced on the record in open court is *jurisdictionally* significant? This Court has never said so and the text of the rule says no such thing—certainly not with any clarity. Rule 4.2(c) requires the judge to sign the order, but if he or she refuses, the rule says nothing that converts that refusal into a jurisdictional bar against the aggrieved party (the one wrongly denied notice, which is the only reason a Rule 4.2(c) order is even needed). As the U.S. Supreme Court put it recently, even when talking about a *statute*, "this Court will treat a procedural requirement as jurisdictional only if Congress *clearly* states that it is." *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (preliminary print) (emphasis added; internal quotations and punctuation omitted).

Whether Rule 4.2(c)'s "written order" requirement is rightly deemed jurisdictional, or what consequence there would be either way, are questions that need not be resolved today—but we should resolve them one day.

law." *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 717 (Tex. 2003).

This Court thus decided to do what Unity asked the court of appeals to do: direct the trial court to enter a written order "affixing the date on which [Unity], or [Unity's] attorney first either received notice or acquired actual knowledge of the judgment." In my mind, the goal was simply to get the train back on the tracks. If the trial court would just sign the order that it had orally granted, which found June 23, 2020 as the notice date, our work would have been done. The court of appeals could then take the next step of resolving the appeal's underlying merits.

Yet again, not so fast. Somewhat ironically, given the notice problems that have pervaded this case and led to the filings here, it took several weeks for this Court to receive notice of the signed order. But it finally came.[6] What truly matters, though, is that the order did *not* confirm the oral finding at the Rule 306a hearing. Instead of June 23, 2020, it listed the seemingly abandoned May 26, 2020 date as when "Unity National Bank's attorney received notice and/or acquired actual knowledge of the Final Summary Judgment."[7] Attached to the order was a scanned data entry that, according to the order, reflected "records from the Harris County District Clerk's Office." The form is unfamiliar to me,

---

[6] Our order was issued on March 17, 2023. It directed that the district court's order be filed in this Court by April 7. After multiple inquiries, the order was sent to this Court on May 3. When it arrived, it reflected that the district court had signed it on April 12.

[7] As a refresher, May 26 was the date that *Scroggins's* counsel first alleged having received notice before receiving the district clerk's vague assertion of electronic submission on May 21. So, three years later, the story has come full circle. If only a record of that notice had been produced at that time—or, frankly, any time since—all of this could have been easily avoided.

6

but on its face it appears to suggest that counsel received (and perhaps "viewed") the order on May 26.

Whether it means that or not, no party has spoken up to say otherwise or to tell us that the district court's fixation of that date was wrong. That finding changes everything. Unlike the June 23 notice date, which would have allowed us to direct the court of appeals to reach the merits of the underlying appeal, May 26 was five days after the district court signed the order. We know that Scroggins had notice on May 26, as discussed above, but only now, for the first time, has there been any showing that *Unity* had notice then, too. And if Unity indeed had notice on May 26, it could have timely perfected a notice of appeal or pursued post-judgment relief in the trial court that would extend the appellate timelines. Yet it did not, which means that neither this Court nor the court of appeals can do anything else. "[T]he lack of a timely notice of appeal is the most fundamental procedural error that can lead to a total loss—and that is because the absence of a timely notice of appeal prevents the appellate court from ever exercising jurisdiction in the first place." *Mitschke v. Borromeo*, 645 S.W.3d 251, 260 (Tex. 2022) (emphasis deleted).

I am disturbed, however, about how notice problems of one sort or another have permeated this case from the very beginning:

- Despite the mandatory duty to "immediately give notice" of a final judgment, Tex. R. Civ. P. 306a.3, at least five days passed from the judgment being signed to any party receiving notice of it (assuming that I am interpreting the data sheet correctly).

- When Unity later contended that it received notice on June 23, no one said at the hearing, "No, look at this data sheet, which proves that *both* sides saw it on May 26." All that was referenced was an "open records" request—one that never made another appearance in the record.

7

- At the eventual hearing, the district court did not find May 26 as the correct date. Nor did it reserve its ruling. It agreed with Unity's June 23 date, subject only to a vague reference to a possible motion for reconsideration that no one ever filed based on the potential "open records" information that was never produced.

- But then the court signed *nothing*, despite repeated requests and the mandatory rule that required it to do so.

- Nor did the court of appeals enforce the rule requiring a signed order. It neither deemed the notice date to be June 23 (as the record of the hearing stated it was) nor directed the trial court to sign an order with that or any date. If this pattern were to recur, it suggests that if a party does not get timely notice, all a trial court needs to do to evade appellate review is—well, nothing.

- Then, when this Court finally took action, notice came late in two senses: an April 7, 2023 deadline was blown and an order signed on April 12 did not come to us until May 3.

The resulting questions from this strange fact pattern outnumber the answers:

- Was the data suggesting that notice came on May 26, 2020 available from the very beginning—and if not, why not?

- Where did that May 26 data sheet come from? Who obtained it, and when?

- What exactly does that data sheet prove?

- Why did the district clerk's initial email to counsel for Scroggins state that "[t]he E-Notice records indicate that the email notices were sent on 5/21/20 to both Plaintiff and Defendant attorneys"? Where is *that* documentation? Did it ever exist? Was it true?

- Why did it take nearly *three years* of litigation about the date of notice for the May 26 date to reemerge, now with apparent support, and only because the Texas Supreme Court insisted on probing?

My concerns here extend beyond these parties, which is why I

8

take the trouble to memorialize them. From start to finish, these proceedings reflect how far we are from the seamless judicial system that we aspire to be, particularly with respect to the often-dispositive question of timely notice. The chief justification for rigid deadlines is the need for finality. But that only works if parties actually have the notice necessary for timely action. And when that notice is denied, the consequences *cannot* be visited exclusively on the aggrieved party. *Cf. In re Whataburger*, 645 S.W.3d at 190–91 ("We hold that a party who does not receive notice of the order in time to appeal because of the trial court clerk's error may seek review by mandamus.").

Predictably, the murky notice in this case has had the opposite effect of generating true finality. The case has dragged on and on, absorbing substantial party and judicial resources for no good purpose.

Perhaps there is something else in this story that would change my perspective. Nothing would surprise me at this point. But Unity has not explained why the district court's order was wrong, so I can only conclude that the order—despite the many questions surrounding it—is correct. On that basis alone, I must concur in the denial of the petition for review and the petition for writ of mandamus.

Evan A. Young
Justice

**OPINION FILED:** June 16, 2023