(Slip Opinion) OCTOBER TERM, 2022 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SANTOS-ZACARIA AKA SANTOS-SACARIAS *v.* GARLAND

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 21–1436. Argued January 17, 2023—Decided May 11, 2023

Petitioner Leon Santos-Zacaria (who goes by the name Estrella) is a noncitizen in removal proceedings. She sought protection from removal, which an Immigration Judge denied. Santos-Zacaria appealed to the Board of Immigration Appeals, which upheld the Immigration Judge's decision. She then filed a petition for review in the Fifth Circuit under 8 U. S. C. §1252, alleging that the Board had impermissibly engaged in factfinding that only the Immigration Judge could perform. The Fifth Circuit dismissed Santos-Zacaria's petition in part, finding that she had not satisfied §1252(d)(1)'s exhaustion requirement. Section 1252(d)(1) provides that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." The Fifth Circuit raised the exhaustion issue *sua sponte* based on its characterization of §1252(d)(1)'s exhaustion requirement as jurisdictional. And the Fifth Circuit concluded that Santos-Zacaria failed to exhaust because she failed to raise her impermissible-factfinding claim to the Board in a motion for reconsideration before filing her petition for judicial review.

*Held*:
  1. Section 1252(d)(1)'s exhaustion requirement is not jurisdictional. Pp. 3–11.
    (a) A "jurisdictional" prescription sets the bounds of the "court's adjudicatory authority," *Kontrick* v. *Ryan,* 540 U. S. 443, 455, while nonjurisdictional rules govern how courts and litigants operate within those bounds. The "jurisdictional" tag carries potentially "[h]arsh consequences." *Fort Bend County* v. *Davis*, 587 U. S. ___, ___. For example, courts must enforce jurisdictional rules *sua sponte*, even in the

face of a litigant's forfeiture or waiver. *Hamer* v. *Neighborhood Housing Servs. of Chicago*, 583 U. S. 17, \_\_\_–\_\_\_. To ensure that courts impose such consequences only when Congress unmistakably has so instructed, a rule is treated as jurisdictional "only if Congress 'clearly states' that it is." *Boechler* v. *Commissioner*, 596 U. S. \_\_\_, \_\_\_. Pp. 3–4.

(b) Section 1252(d)(1) lacks the clear statement necessary to qualify as jurisdictional. First, exhaustion requirements are quintessential claim-processing rules, designed to promote efficiency in litigation. Treating an exhaustion requirement as jurisdictional would disserve that very interest. Second, §1252(d)(1)'s language differs substantially from more clearly jurisdictional language in related statutory provisions. Elsewhere, including in provisions enacted at the same time and in the same section as §1252(d)(1), Congress specified that "no court shall have jurisdiction" to review certain matters. See, *e.g.*, §§1252(a)(2)(A), (a)(2)(B), (a)(2)(C), 1182(a)(9)(B)(v), (d)(3)(B)(i). Taken together, these two features of §1252(d)(1) establish that it is not clearly jurisdictional. Pp. 4–7.

(c) Given the clear-statement rule, the Government offers no persuasive reason to treat §1252(d)(1) as jurisdictional. First, merely that a statute addresses the "court" and limits "review" does not necessarily mean the statute governs the court's *jurisdiction.* Second, the Government fails to show that §1252(d)(1) clearly carried forward any understanding that a prior version of §1252(d)(1) (former §1105a(c)) was jurisdictional. Finally, §1252(d)(1)'s placement within §1252 is insufficient to establish that §1252(d)(1) is clearly jurisdictional. Pp. 7–11.

2. Section 1252(d)(1) does not require noncitizens to request discretionary forms of review, like reconsideration of an unfavorable Board of Immigration Appeals determination. Pp. 11–18.

(a) Section 1252(d)(1) requires exhausting only remedies "available . . . as of right." In the context relevant here—review of a legal claim—that phrase means review that is guaranteed, not discretionary. Reconsideration by the Board, however, is discretionary. Board reconsideration is therefore not available "as of right," and §1252(d)(1) does not require a noncitizen to pursue it. Pp. 11–13.

(b) The Government cannot show that exhausting remedies "available . . . as of right" requires seeking Board reconsideration. The Government emphasizes a noncitizen's right to file a motion to reconsider. But the right to *request* discretionary review does not make a remedy available as of right. Nor does §1252(d)(1) draw a distinction, suggested by the Government, between those remedies made discretionary by statute and those made so by regulation. In addition, although the decision whether to grant reconsideration is reviewable for

abuse of discretion, it remains a matter of discretion all the same. Finally, if seeking reconsideration qualified as exhausting a remedy "available . . . as of right," the statutory scheme would become incoherent. Noncitizens would need to seek reconsideration in every case. Yet the statute is designed around pursuing judicial review and agency reconsideration in parallel. The Board would be flooded with reconsideration motions that noncitizens would not otherwise file. And courts would be flooded with pre-reconsideration petitions for review that, under the Government's interpretation, would be unexhausted and therefore pointless. Pp. 13–17.

(c) Alert to the problems with requiring noncitizens to *always* seek reconsideration for exhaustion purposes, the Government instead would require seeking reconsideration only *sometimes*: when the noncitizen is raising an issue not previously presented to the agency. But seeking reconsideration does not qualify as a remedy "available . . . as of right" sometimes and not others. Instead, it does not qualify at all. The Government's approach, moreover, would not fix the problem of producing pointless, unexhausted petitions for review. And it would introduce practical difficulties for courts, noncitizens, and the Board. Pp. 17–18.

22 F. 4th 570, vacated in part and remanded.

JACKSON, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SOTOMAYOR, KAGAN, GORSUCH, KAVANAUGH, and BARRETT, JJ., joined. ALITO, J., filed an opinion concurring in the judgment, in which THOMAS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

---

No. 21–1436

---

## LEON SANTOS-ZACARIA AKA LEON SANTOS-SACARIAS, PETITIONER *v.* MERRICK B. GARLAND, ATTORNEY GENERAL

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[May 11, 2023]

JUSTICE JACKSON delivered the opinion of the Court.

Under 8 U. S. C. §1252(d)(1), a noncitizen who seeks to challenge an order of removal in court must first exhaust certain administrative remedies. This case presents two questions regarding that statutory provision. For the reasons explained below, we hold that §1252(d)(1) is not jurisdictional. We hold further that a noncitizen need not request discretionary forms of administrative review, like reconsideration of an unfavorable Board of Immigration Appeals determination, in order to satisfy §1252(d)(1)'s exhaustion requirement.[1]

## I

Petitioner Leon Santos-Zacaria (who goes by the name Estrella) fled her native Guatemala in her early teens. She has testified that she left that country, and fears returning, because she suffered physical harm and faced death threats as a transgender woman who is attracted to men.

---

[1] This opinion uses the term "noncitizen" as equivalent to the statutory term "alien." See, *e.g.*, *Nasrallah* v. *Barr*, 590 U. S. \_\_\_, \_\_\_, n. 2 (2020) (slip op., at 4, n. 2).

Santos-Zacaria eventually sought refuge in the United
States. Her first stay in the country was brief, and she was
removed by immigration authorities in 2008. In 2018, she
returned and was apprehended again by immigration au-
thorities.

At that point, Santos-Zacaria sought protection from re-
moval, including withholding of removal based on the like-
lihood she would be persecuted in Guatemala. See 8
U. S. C. §1231(b)(3)(A). An Immigration Judge within the
Department of Justice entered an order reinstating Santos-
Zacaria's prior removal order and denying the protection
she sought.

On appeal within the Department, the Board of Immigra-
tion Appeals upheld the Immigration Judge's denial of
withholding of removal. The Board agreed with Santos-
Zacaria in part, determining that she had suffered past per-
secution in Guatemala and was therefore entitled to a pre-
sumption of future persecution. But the Board found that
this presumption was rebutted (which was an issue that the
Immigration Judge had not reached).

Santos-Zacaria then filed a petition for review in the U. S.
Court of Appeals for the Fifth Circuit under 8 U. S. C.
§1252. Her petition contended, among other things, that
when the Board concluded that the presumption of future
persecution was rebutted, it had impermissibly engaged in
factfinding that only the Immigration Judge could perform.

In a 2-to-1 decision, the Court of Appeals dismissed
Santos-Zacaria's impermissible-factfinding challenge for
lack of jurisdiction, on the ground that she had failed to ex-
haust administrative remedies under §1252(d)(1). 22 F. 4th
570, 573 (2022). The Government had not raised exhaus-
tion, but the Court of Appeals did so *sua sponte* because it
characterized §1252(d)(1) as establishing a jurisdictional
requirement. The court further held that, because Santos-
Zacaria had not raised the impermissible-factfinding chal-
lenge in a motion for reconsideration before the Board prior

to filing her petition with the court, she had not satisfied §1252(d)(1)'s exhaustion requirement.

There is disagreement among the Courts of Appeals concerning the two issues presented in this case: (1) whether §1252(d)(1)'s exhaustion requirement is jurisdictional,[2] and (2) whether §1252(d)(1) requires seeking discretionary administrative review, like reconsideration by the Board of Immigration Appeals.[3]  We granted certiorari to resolve these conflicts.  598 U. S. \_\_\_ (2022).

## II

Section 1252(d)(1) provides: "A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." The first question before us is whether this provision ranks as jurisdictional.  We hold that it does not.

## A

A "jurisdictional" prescription sets the bounds of the

_____

[2] Compare, *e.g.*, *Chavarria-Reyes* v. *Lynch*, 845 F. 3d 275, 279 (CA7 2016) (not jurisdictional), with, *e.g.*, *García-Cruz* v. *Sessions*, 858 F. 3d 1, 7 (CA1 2017) (jurisdictional); *Lin* v. *Attorney Gen. of U. S.*, 543 F. 3d 114, 120, and n. 6 (CA3 2008) (same); *Massis* v. *Mukasey*, 549 F. 3d 631, 638 (CA4 2008) (same); *Omari* v. *Holder*, 562 F. 3d 314, 318–319 (CA5 2009) (same); *Ramani* v. *Ashcroft*, 378 F. 3d 554, 558–559 (CA6 2004) (same); *Molina* v. *Whitaker*, 910 F. 3d 1056, 1061 (CA8 2018) (same); *Alvarado* v. *Holder*, 759 F. 3d 1121, 1127, and n. 5 (CA9 2014) (same); *Robles-Garcia* v. *Barr*, 944 F. 3d 1280, 1283–1284 (CA10 2019) (same); and *Alim* v. *Gonzales*, 446 F. 3d 1239, 1253 (CA11 2006) (same), with, *e.g.*, *Zhong* v. *United States Dept. of Justice*, 480 F. 3d 104, 119–122 (CA2 2007) (jurisdictional as to remedy exhaustion but not issue exhaustion).

[3] Compare, *e.g.*, *Olivas-Motta* v. *Whitaker*, 910 F. 3d 1271, 1279–1280 (CA9 2018) (not required); and *Indrawati* v. *United States Atty. Gen.*, 779 F. 3d 1284, 1299 (CA11 2015) (same), with, *e.g.*, *Meng Hua Wan* v. *Holder*, 776 F. 3d 52, 57 (CA1 2015) (required when raising issues not previously presented to the agency); *Omari*, 562 F. 3d, at 319–320 (same); *Mencia-Medina* v. *Garland*, 6 F. 4th 846, 848–849 (CA8 2021) (same); and *Sidabutar* v. *Gonzales*, 503 F. 3d 1116, 1122 (CA10 2007) (same).

"court's adjudicatory authority." *Kontrick* v. *Ryan*, 540 U. S. 443, 455 (2004). By contrast, nonjurisdictional rules govern how courts and litigants operate within those bounds. Claim-processing rules, for example, "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson* v. *Shinseki*, 562 U. S. 428, 435 (2011).

"Harsh consequences attend the jurisdictional brand." *Fort Bend County* v. *Davis*, 587 U. S. \_\_\_, \_\_\_ (2019) (slip op., at 7) (alteration and internal quotation marks omitted). For example, because courts are not able to exceed limits on their adjudicative authority, they cannot grant equitable exceptions to jurisdictional rules. See *Boechler* v. *Commissioner*, 596 U. S. \_\_\_, \_\_\_ (2022) (slip op., at 3). Jurisdictional objections also can be raised at any time in the litigation. *Hamer* v. *Neighborhood Housing Servs. of Chicago*, 583 U. S. 17, \_\_\_–\_\_\_ (2017) (slip op., at 2–3). Moreover, and most relevant here, courts must enforce jurisdictional rules *sua sponte*, even in the face of a litigant's forfeiture or waiver. *Ibid.*

We treat a rule as jurisdictional "only if Congress 'clearly states' that it is." *Boechler*, 596 U. S., at \_\_\_ (slip op., at 3) (quoting *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 515 (2006)). And "[w]here multiple plausible interpretations exist—only one of which is jurisdictional—it is difficult to make the case that the jurisdictional reading is clear." 596 U. S., at \_\_\_ (slip op., at 5). We adopted this clear-statement principle in *Arbaugh* "to leave the ball in Congress' court," ensuring that courts impose harsh jurisdictional consequences only when Congress unmistakably has so instructed. 546 U. S., at 515–516; see *Wilkins* v. *United States*, 598 U. S. 152, 157–158 (2023).

### B

Two aspects of §1252(d)(1), taken together, persuade us

that this statutory provision lacks the clear statement necessary to qualify as jurisdictional.

First, §1252(d)(1) imposes an exhaustion requirement, which is a quintessential claim-processing rule. When faced with a type of statutory requirement that "ordinarily [is] not jurisdictional," we naturally expect the ordinary case, not an "exceptional one." *Sebelius* v. *Auburn Regional Medical Center*, 568 U. S. 145, 154–155 (2013); see also, *e.g.*, *United States* v. *Kwai Fun Wong*, 575 U. S. 402, 410 (2015). So it is here. We routinely "trea[t] as nonjurisdictional . . . threshold requirements that claimants must complete, or exhaust, before filing a lawsuit." *Reed Elsevier, Inc.* v. *Muchnick*, 559 U. S. 154, 166, and n. 6 (2010).[4] Indeed, we have yet to hold that any statutory exhaustion requirement is jurisdictional when applying the clear-statement rule that we adopted in *Arbaugh*.

Exhaustion is typically nonjurisdictional for good reason. Jurisdictional treatment of an exhaustion requirement could undo the benefits of exhaustion. That is, exhaustion promotes efficiency, including by encouraging parties to resolve their disputes without litigation. See *Jones* v. *Bock*, 549 U. S. 199, 219 (2007); *McCarthy* v. *Madigan*, 503 U. S. 140, 145 (1992). But jurisdictional treatment can result in

———————

[4] There are many examples. To name a few, we deemed exhaustion requirements nonjurisdictional in *Fort Bend County* v. *Davis*, 587 U. S. \_\_\_, \_\_\_ (2019) (slip op., at 9) (Title VII, 42 U. S. C. §§2000e–5(e)(1), (f)(1)), *EPA* v. *EME Homer City Generation, L. P.*, 572 U. S. 489, 511–512 (2014) (Clean Air Act, 42 U. S. C. §7607(d)(7)(B)), *Union Pacific R. Co.* v. *Locomotive Engineers*, 558 U. S. 67, 82 (2009) (Railway Labor Act, 45 U. S. C. §152), and *Woodford* v. *Ngo*, 548 U. S. 81, 101 (2006) (Prison Litigation Reform Act, 42 U. S. C. §1997e(a); see also *Jones* v. *Bock*, 549 U. S. 199, 211–217 (2007)). And we have repeatedly observed that exhaustion is usually nonjurisdictional. See, *e.g.*, *Patchak* v. *Zinke*, 583 U. S. \_\_\_, \_\_\_ (2018) (plurality opinion) (slip op., at 7) (naming "an exhaustion requirement" as a typical claim-processing rule); *Jones*, 549 U. S., at 212 (exhaustion is "usual[ly]" regarded "as an affirmative defense").

the opposite: If exhaustion is jurisdictional, litigants must slog through preliminary nonjudicial proceedings even when, for example, no party demands it or a court finds it would be pointless, wasteful, or too slow.  Similarly, an exhaustion objection raised late in litigation (as jurisdictional objections can be) might derail "many months of work on the part of the attorneys and the court."  *Henderson*, 562 U. S., at 434–435 (jurisdictional rules risk "the waste of judicial resources and may unfairly prejudice litigants").  Thus, jurisdictional treatment could disserve the very interest in efficiency that exhaustion ordinarily advances.  See *Wilkins*, 598 U. S., at 158 ("Given th[e] risk of disruption and waste that accompanies the jurisdictional label, courts will not lightly apply it to procedures Congress enacted to keep things running smoothly and efficiently").

It would therefore be aberrant for the exhaustion requirement in §1252(d)(1) to be characterized as jurisdictional.  Of course, "Congress is free to attach" jurisdictional consequences to a requirement that usually exists as a claim-processing rule.  *Henderson*, 562 U. S., at 435.  But to be confident Congress took that unexpected tack, we would need unmistakable evidence, on par with express language addressing the court's jurisdiction.  Nothing close appears here.

Instead, a second feature of the statute compounds our doubt that §1252(d)(1) qualifies as a jurisdictional rule: That provision's language differs substantially from more clearly jurisdictional language in related statutory provisions.  Elsewhere in the laws governing immigration cases, Congress specified that "no court shall have jurisdiction" to review certain matters.[5]  Over and over again, Congress used that language in provisions that were enacted at the

—————————

[5] See, *e.g.*, 8 U. S. C. §§1252(a)(2)(A), (a)(2)(B), (a)(2)(C), (b)(9), (g), 1182(a)(9)(B)(v), (d)(3)(B)(i), (d)(12), (h), (i)(2), 1158(a)(3), 1227(a)(3) (C)(ii), 1229c(f), 1255a(f)(4)(C); see also §1225(b)(1)(D) ("the court shall not have jurisdiction").

same time—and even in the same section—as §1252(d)(1).[6] But Congress eschewed such plainly jurisdictional language in §1252(d)(1).

The contrast between the text of §1252(d)(1) and the "unambiguous jurisdictional terms" in related provisions "show[s] that Congress would have spoken in clearer terms if it intended" for §1252(d)(1) "to have similar jurisdictional force." *Gonzalez* v. *Thaler*, 565 U. S. 134, 143 (2012); accord, *Henderson*, 562 U. S., at 438–439. And, here, there is good reason to infer that the linguistic contrast between §1252(d)(1) and neighboring provisions is meaningful, not haphazard: Unlike other provisions, §1252(d)(1) concerns exhaustion, and its language tracks exhaustion's usual nonjurisdictional status.

Taken together, these two features of §1252(d)(1)—its content as an exhaustion requirement and its contrast with related, plainly jurisdictional provisions—make interpreting §1252(d)(1) as a claim-processing rule credible enough that we cannot deem it clearly jurisdictional. Thus, we conclude that §1252(d)(1) is a non-jurisdictional rule "'merely prescrib[ing] the method by which the jurisdiction granted the courts by Congress is to be exercised.'" *Kontrick*, 540 U. S., at 454 (quoting 12 C. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure §3141, p. 485 (2d ed. 1997)).

## C

The Government offers several reasons why §1252(d)(1) should nonetheless be characterized as jurisdictional. Given our clear-statement rule, none is persuasive.

---

[6] See Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 110 Stat. 3009–546, 3009–577, 3009–582, 3009–597, 3009–607, 3009–612, 3009–638, 3009–639, 3009–649, 3009–691 (codified at §§1182(a)(9)(B)(v), (d)(12), (h), (i)(2), 1158(a)(3), 1225(b)(1)(D), 1227(a)(3)(C)(ii), 1229c(f), 1252(a)(2)(A), (a)(2)(B), (a)(2)(C), (g), 1255a(f)(4)(C)).

First, the Government insists that §1252(d)(1) is jurisdic-
tional because it is addressed to the "court" and limits "re-
view." But that language does not necessarily refer to the
court's *jurisdiction*. Claim-processing rules can also be ad-
dressed to courts. After all, one purpose of such rules is to
"instruct the court on the limits of its discretion" in han-
dling claims. *Kontrick*, 540 U. S., at 456. Provisions limit-
ing "review" can be directions about the mode or manner of
review that are likewise nonjurisdictional in nature. Ex-
amples abound, including elsewhere in the same title and
section as §1252(d)(1). See, *e.g.*, §1252(b)(2) ("The court of
appeals shall review the proceeding on a typewritten record
and on typewritten briefs"); §1535(a)(3) ("The Court of Ap-
peals shall . . . review questions of law de novo"); 5 U. S. C.
§706 ("[T]he court shall review the whole record or those
parts of it cited by a party").

Moreover, when taking other aspects of the statute into
account, it becomes apparent that §1252(d)(1) is not using
"court" and "review" in a jurisdictional manner. Section
1252(d)(1) is not even focused solely on the court. It also
requires that "*the alien* has exhausted" certain remedies,
§1252(d)(1) (emphasis added), so it "speak[s] to a party's
procedural obligations" as well, just like a nonjurisdictional
claim-processing rule, *Fort Bend County*, 587 U. S., at ___
(slip op., at 9) (alteration and internal quotation marks
omitted). In addition, as previously mentioned, Congress
had expressly jurisdictional language close at hand. *Supra*,
at 6–7. Its use of more ambiguous phrasing to impose a
quintessential nonjurisdictional requirement is hardly the
requisite clear statement that §1252(d)(1) is jurisdictional.

Second, the Government seeks to advance a theory that
is based on a prior version of §1252(d)(1)'s exhaustion re-
quirement. A statute that existed before §1252(d)(1) pro-
vided that an "order of deportation . . . shall not be reviewed
by any court if the alien has not exhausted the administra-
tive remedies available to him." 8 U. S. C. §1105a(c) (1958

ed., Supp. III). According to the Government, that predecessor provision was jurisdictional, and Congress merely carried forward that understanding in §1252(d)(1). But at each step of that theory, we find doubt, not clarity.

To begin, the Government has not established that the predecessor provision was actually jurisdictional. Its text, standing alone, did not clearly govern the court's jurisdiction. So the Government turns to precedent. No precedent of this Court, however, established that the predecessor exhaustion provision was jurisdictional (in the sense that we now use the term).

The Government principally invokes *Stone* v. *INS*, 514 U. S. 386 (1995), and *Nken* v. *Holder*, 556 U. S. 418 (2009). Both cases described portions of the Immigration and Nationality Act that contained §1252(d)(1)'s predecessor as "jurisdictional." *Stone*, 514 U. S., at 399, 405; *Nken*, 556 U. S., at 424. But "[j]urisdiction, the Court has observed, is a word of many, too many, meanings," and courts "have more than occasionally" used it to describe rules beyond those governing a court's adjudicatory authority. *Fort Bend County*, 587 U. S., at \_\_\_–\_\_\_, and n. 4 (slip op., at 5–6, and n. 4) (internal quotation marks omitted).

Neither *Stone* nor *Nken* attends to the distinction between "jurisdictional" rules (as we understand them today) and nonjurisdictional but mandatory ones. Indeed, *Stone* predates our cases, starting principally with *Arbaugh* in 2006, that "bring some discipline to the use of th[e] term" "jurisdictional." *Henderson*, 562 U. S., at 435. *Nken* came later, but it never addressed the *Arbaugh* line of cases. And in both *Stone* and *Nken*, whether the provisions were jurisdictional "was not central to the case." *Reed Elsevier*, 559 U. S., at 161. On top of all that, neither case addressed the exhaustion requirement specifically. Instead, both merely mentioned the section of the Immigration and Nationality Act that housed the exhaustion requirement. *Stone*, 514 U. S., at 399, 405; *Nken*, 556 U. S., at 424. *Stone* and *Nken*

therefore cannot be read to establish the predecessor exhaustion requirement as jurisdictional.

The Government also points to pre-*Arbaugh* decisions by lower courts characterizing the predecessor exhaustion provision as jurisdictional. Brief for Respondent 21, n. 6 (collecting cases). We have held, however, that pre-*Arbaugh* lower court cases interpreting a related provision are not enough to make clear that a rule is jurisdictional. *MOAC Mall Holdings LLC* v. *Transform Holdco LLC*, 598 U. S. ___, ___ (2023) (slip op., at 14); *Wilkins*, 598 U. S., at 165; *Boechler*, 596 U. S., at ___ (slip op., at 7–8); *Reed Elsevier*, 559 U. S., at 167–169.

Further weakening the Government's reliance on the claimed jurisdictional status of §1252(d)(1)'s predecessor is the fact that when it enacted §1252(d)(1), Congress did not even recodify that prior provision exactly. Instead, Congress altered the formulation that, according to the Government, had been understood as a jurisdictional rule. Compare 8 U. S. C. §1105a(c) (1958 ed., Supp. III) (a deportation order "shall not be reviewed by any court if ") with 8 U. S. C. §1252(d)(1) (1994 ed., Supp. II) ("[a] court may review a final order of removal only if "). And having gone to the trouble of rewriting the provision, Congress *still* chose not to use the more expressly jurisdictional formulation that it utilized elsewhere. *Supra*, at 6–7. All of this is inconsistent with the Government's theory that Congress understood the predecessor provision to be jurisdictional and carried that forward in §1252(d)(1).

Finally, the Government suggests that §1252(d)(1) is jurisdictional simply because it falls within §1252. Section 1252 is the exclusive source of jurisdiction for immigration cases like this one, the Government contends, so each of §1252's limits must be jurisdictional. Brief for Respondent 17–18.[7] This logical leap falls short. Any foreclosure of

—————

[7] For the proposition that §1252 is the exclusive source of jurisdiction,

sources of jurisdiction *outside* §1252 does not tell us which provisions *within* §1252 are essential jurisdictional prerequisites. And even if some provisions in a statutory section qualify as jurisdictional, that does not suffice to establish that all others are. *Sebelius*, 568 U. S., at 155; *Gonzalez*, 565 U. S., at 146–147. This argument, like the Government's others, fails to demonstrate that it is "clea[r]" that Congress made §1252(d)(1)'s exhaustion requirement jurisdictional. *Arbaugh*, 546 U. S., at 515.

\*    \*    \*

Because §1252(d)(1)'s exhaustion requirement is not jurisdictional, it is subject to waiver and forfeiture. See *Nutraceutical Corp.* v. *Lambert*, 586 U. S. \_\_\_, \_\_\_–\_\_\_ (2019) (slip op., at 3–4). The Court of Appeals erred in holding otherwise.

## III

The Government now suggests that even if §1252(d)(1) is not jurisdictional, the Court of Appeals' *sua sponte* requirement that Santos-Zacaria comply with §1252(d)(1) can be justified on alternative grounds. Brief for Respondent 26, n. 7. We do not reach that issue. Instead, we hold that, even if §1252(d)(1) were applied here, Santos-Zacaria has done enough to satisfy it. That is, §1252(d)(1) does not require that Santos-Zacaria seek reconsideration from the Board, as the Court of Appeals believed.

### A

Under the plain language of §1252(d)(1), a noncitizen

———————

the Government relies on two provisions. Section 1252(a)(5) states that "a petition for review filed . . . in accordance with this section shall be the sole and exclusive means for judicial review of" certain removal orders. Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from" removal proceedings "shall be available only in judicial review of a final order under this section," and, with certain exceptions, "no court shall have jurisdiction" under other provisions.

must "exhaus[t] all administrative remedies available to the alien as of right." The parties here dispute whether, to fulfill this requirement, Santos-Zacaria had to seek a certain form of review of her legal claim: reconsideration by the Board of Immigration Appeals. Whether exhaustion for §1252(d)(1) purposes requires seeking Board reconsideration turns on the meaning of "remedies available . . . as of right," which, in turn, relates to the specifics of the Board's reconsideration process.

Pursuant to that process, after the Board renders a final decision, it can provide additional review via reconsideration and its close cousin, reopening. Reconsideration addresses "errors of law or fact in the previous order," while reopening accounts for "new facts." §§1229a(c)(6)–(7); see 8 CFR §1003.2 (2022).[8]

Meanwhile, it is well established that a remedy is not available "as of right" if it is discretionary. "As of right" is a familiar phrase in the law, meaning "[b]y virtue of a legal entitlement." Black's Law Dictionary 141 (11th ed. 2019). And in the context relevant here—review of a legal claim— the phrase means review that is guaranteed, not contingent on permission or discretion. An "appeal as of right" is one over which the court "has no discretion to deny review." *Id.*, at 121. By contrast, "discretionary review" is review "that is not a matter of right" and instead requires "permission." *Id.*, at 1579. Under the Federal Rules, for instance, an appeal "as of right," Fed. Rule App. Proc. 3, stands in contrast to an appeal "within the [court's] discretion," Fed. Rule App. Proc. 5. To take another example, this Court's certiorari review is "not a matter of right, but of judicial discretion." Supreme Court Rule 10. Thus, because §1252(d)(1) requires exhausting only remedies available "as of right," it does not

————————
[8] Reconsideration and reopening are related forms of relief, and the parties' arguments about §1252(d)(1) address both. But reconsideration is the pertinent one here because Santos-Zacaria alleges the Board committed an error of law.

require exhausting discretionary review.

Board reconsideration and reopening are discretionary. By regulation, today and at the time of §1252(d)(1)'s enactment, "[t]he decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board." 8 CFR §1003.2(a) (2022); 8 CFR §3.2 (1996); 61 Fed. Reg. 18904 (1996); see *Dada* v. *Mukasey*, 554 U. S. 1, 12–13 (2008) (tracing history of discretion to reopen back to 1916). That means a noncitizen can *request* reconsideration. But only if "the motion to reconsider is granted" does the Board proceed to make the "decision upon such reconsideration" as to whether to "affirm, modify, or reverse the original decision." 8 CFR §1003.2(i). And, again, whether to grant the motion to reconsider, and thus proceed to such review, is up to the Board in its discretion. §1003.2(a); *In re O-S-G-*, 24 I. & N. Dec. 56, 57 (BIA 2006) ("[W]e have authority to deny a motion to reconsider as a matter of discretion"); cf. §1003.2(a) ("The Board has discretion to deny a motion to reopen even if the party moving has made out a *prima facie* case for relief").

Because Board reconsideration (like reopening) is a discretionary form of review, it is not available to the noncitizen "as of right." Section 1252(d)(1) therefore does not require a noncitizen to pursue it.

B

The Government acknowledges that because §1252(d)(1) requires only exhaustion of remedies "available . . . as of right," "a noncitizen need not exhaust 'discretionary' remedies." Brief for Respondent 39. It also acknowledges that Board reconsideration is discretionary. *Id.*, at 41, n. 11; Brief in Opposition 15–16. Still, the Government tries to squeeze reconsideration into the statutory requirement of remedies available "as of right." We are unpersuaded.

According to the Government, §1252(d)(1) requires seeking reconsideration because a noncitizen has the "right" *to*

*file a motion* to reconsider.  But that is a peculiar under-
standing of a remedy available "as of right."  The Govern-
ment identifies no other provision that uses "as of right" to
describe the right to file a motion that appeals to the deci-
sionmaker's discretion.  Tr. of Oral Arg. 35.  A discretionary
appeal, for example, is not "as of right" just because a liti-
gant has a right to file a petition for permission to appeal.
See, *e.g.*, 28 U. S. C. §1292(b); Fed. Rule Civ. Proc. 23(f).

That understanding of "as of right" is so unnatural that
even the Government does not fully embrace it, as its view
of other forms of relief reveals.  Cancellation of removal,
voluntary departure, and adjustment of status are discre-
tionary types of immigration relief available to noncitizens
only as a matter of grace, not entitlement.  8 U. S. C.
§§1229b, 1229c, 1255; see *Kucana* v. *Holder*, 558 U. S. 233,
247–248 (2010).  And the Government accordingly volun-
teers them as examples of remedies "not 'available' to [a
noncitizen] 'as of right.'"  Brief for Respondent 39 (quoting
§1252(d)(1)).  Yet eligible noncitizens can file requests for
those forms of relief.  See §§1229b, 1229c, 1255; 8 CFR
§§1240.20, 1240.26, 1245.1.  Even the Government does not
say these are remedies available "as of right" just because
noncitizens have a right to request them.

The Government's reading has a further flaw.  Under-
standing the *motion* for reconsideration as a remedy "avail-
able . . . as of right" does not just read "as of right" unnatu-
rally; it reads it out of §1252(d)(1) altogether.  Under the
Government's view, there is a remedy that is "available . . .
as of right" here because the noncitizen is entitled to re-
quest reconsideration by filing a motion.  See Brief for Re-
spondent 38–39.  But if a noncitizen could *not* request re-
consideration, there would be no remedy "available" for the
noncitizen to exhaust.  The statute's additional require-
ment that the remedy be available "as of right" would be
entirely superfluous.  Instead, we read the phrase "as of
right" to do its usual work in the context of review of a legal

claim: distinguishing between discretionary and nondiscretionary review.

Switching gears, the Government suggests that §1252(d)(1) excludes only remedies made discretionary *by statute*, while reconsideration and reopening are made discretionary *by regulation*. *Id.*, at 39–40. True, Congress elsewhere focused on discretion specified by statute. We considered such a provision in *Kucana* v. *Holder*, addressing administrative actions "'the authority for which is *specified under this subchapter* to be in the discretion of the Attorney General.'" 558 U. S., at 237 (quoting §1252(a)(2)(B)(ii)). But §1252(d)(1) draws no such line. It simply covers remedies that are "available . . . as of right." Whether that characteristic is established by statute or regulation makes no difference.

It is especially implausible that §1252(d)(1) treats reconsideration and reopening as "available . . . as of right" just because the discretion whether to grant them is not specified by statute. As we noted previously, when Congress enacted §1252(d)(1), regulation and historical practice had already firmly established Board reconsideration and reopening as discretionary. *Supra*, at 13; 8 CFR §3.2 (1996); *Dada*, 554 U. S., at 12–13. We have no reason to think §1252(d)(1) categorizes those well-understood discretionary forms of review as "available . . . as of right."

The Government also posits that reconsideration and reopening are "available . . . as of right" because in certain cases, denying the noncitizen's motion would be reversible as an abuse of discretion. See Brief for Respondent 41, n. 11; Tr. of Oral Arg. 39. All this shows is that the agency's discretion has limits. That is no surprise. "Traditionally, . . . decisions on matters of discretion are reviewable for abuse of discretion." *Highmark Inc.* v. *Allcare Health Management System, Inc.*, 572 U. S. 559, 563 (2014) (internal quotation marks omitted). They remain "matters of discretion" all the same.

Finally, not only do the Government's theories fail on their own terms, but they also share a common problem: They would render the statutory scheme incoherent. The Government urges that reconsideration (or at least a motion to reconsider) is an "administrative remed[y] available . . . as of right," §1252(d)(1). Yet §1252(d)(1) requires "exhaus[ting] all" such remedies, without exception. So if the Government is correct, noncitizens would need to seek reconsideration from the Board before obtaining judicial review in every case. But that obligation is incompatible with the rest of the statute's design.

In particular, elsewhere, the statute provides for a process that does *not* require reconsideration before judicial review. Noncitizens are authorized to seek judicial review of an agency order and, additionally, to seek administrative review of the agency's decision via a "motion to reopen or reconsider the order." See §1252(b)(6). The statute gives noncitizens *the same 30-day window* from the agency order to seek judicial review and administrative reconsideration. §§1252(b)(1), 1229a(c)(6)(B). The statute is thus designed around pursuing judicial review and agency reconsideration *in parallel*, not waiting to seek judicial review until after reconsideration is complete. With respect to a prior version of this scheme, we observed that, if a noncitizen seeks reconsideration, the statute plainly "contemplates" that "two separate petitions for [judicial] review will exist in the normal course": one from the agency's initial order and a later one from its decision on the reconsideration motion. *Stone*, 514 U. S., at 393–395.

If reconsideration were required for exhaustion, however, only *one* petition—the later one—would pass muster. The first petition would be premature. So the Government's interpretation of remedies "available . . . as of right" would not just flood the Board with reconsideration motions that noncitizens otherwise would not file; it would also flood the courts with pointless premature petitions—petitions that

the statutory scheme would provide for noncitizens to file, on the one hand, yet deem unexhausted, on the other. We decline to interpret the statute to be so at war with itself.

C

Conceding that it "would be inconsistent with" the design of the statute to require noncitizens to *always* file a motion to reconsider for exhaustion purposes, the Government instead would require such a motion only *sometimes*: when the noncitizen is raising an issue not previously presented to the agency. Brief for Respondent 36–37. According to the Government, a noncitizen must give the agency an opportunity to consider an issue before raising it in court. So in the Government's view, a motion to reconsider is required when it is the only remaining mechanism for presenting a new issue, but not when the noncitizen has already presented every issue to the agency in other ways.[9]

That is not the scheme Congress adopted. Section 1252(d)(1) does not require noncitizens to give the agency an opportunity to consider an objection *using every mechanism available.* It requires exhausting only administrative remedies "available . . . as of right." And we do not see how seeking reconsideration can qualify sometimes and not others. Instead, for the reasons already explained, it does not qualify at all. *Supra*, at 12–16.

Nor would the Government's approach cure the inconsistency identified above: The statutory scheme would still produce pointless, unexhausted petitions for review. See *supra*, at 16–17. Consider, for example, a noncitizen whose only issue for judicial review is one she had not raised previously because the Board's decision introduced the issue.

_____

[9] Here, for example, Santos-Zacaria objects that the Board conducted impermissible factfinding. Because that issue arose in the Board's decision, the Government says, Santos-Zacaria had not previously raised her objection to the Board but she could have done so in a motion to reconsider. In the Government's view, she needed to take that option.

Under the Government's view, §1252(d)(1) bars judicial re-
view until after she pursues reconsideration. Yet, else-
where, the statutory scheme contemplates that she imme-
diately petition for judicial review of the Board's initial,
prereconsideration decision. See *ibid.*; §§1252(b)(1), (6),
1229a(c)(6)(B). Any such petition is a worthless exercise,
however, if it is unexhausted by definition, as the Govern-
ment maintains.

The Government's approach would also introduce practi-
cal difficulties. If motions to reconsider are required only
sometimes, what cases qualify? In this very case, the mem-
bers of the Court of Appeals panel disagreed about whether
a motion to reconsider was required under the Govern-
ment's rule, largely because they differed over whether
Santos-Zacaria had asserted adequately to the Board ear-
lier that new factfinding would be impermissible. Compare
22 F. 4th, at 573 (majority opinion), with *id.*, at 575 (Hig-
ginson, J., dissenting). And how are noncitizens—already
navigating a complex bureaucracy, often *pro se* and in a for-
eign language—to tell the difference? The Government's
position presents a world of administrability headaches for
courts, traps for unwary noncitizens, and mountains of re-
consideration requests for the Board (filed out of an abun-
dance of caution by noncitizens unsure of the need to seek
reconsideration). For the reasons discussed, we are confi-
dent that Congress did not adopt such a scheme.[10]

---

[10] Under our holding, §1252(d)(1) does not require a noncitizen to seek
discretionary Board review to raise issues that she had not raised to the
Board before. To that limited extent, we reject the Government's conten-
tion that Congress "preclud[ed] the courts from considering any issue
that had not been presented to the Board in the first instance," Brief for
Respondent 31. But beyond that, we do not address more generally what
obligations noncitizens have to present specific issues when appearing
before the agency.

Opinion of the Court

\*    \*    \*

Section 1252(d)(1)'s exhaustion requirement is not juris-dictional and does not oblige a noncitizen to seek discretion-ary review, like reconsideration before the Board of Immi-gration Appeals. We vacate the portion of the judgment of the Court of Appeals dismissing Santos-Zacaria's petition for review and remand the case for further proceedings con-sistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 21–1436

_____

## LEON SANTOS-ZACARIA AKA LEON SANTOS-SACARIAS, PETITIONER *v.* MERRICK B. GARLAND, ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[May 11, 2023]

JUSTICE ALITO, with whom JUSTICE THOMAS joins, concurring in judgment.

I agree with the Court that 8 U. S. C. §1252(d)(1) does not require the filing of a motion for reconsideration under the circumstances presented here. That provision requires the exhaustion of those administrative remedies that are "available to [an] alien as of right," but the decision to grant reconsideration is discretionary. 8 CFR §1003.2(a) (2022). Because that determination disposes of this case, I would not decide whether §1252(d)(1) is jurisdictional with respect to the administrative remedies to which it does apply.