NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1316
_____

RUTUL A JAISWAL,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an
Order of the Board of Immigration Appeals
(Agency No. A220-999-851)
Immigration Judge:  Richard Bailey
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 12, 2026
_____

Before:  CHAGARES, Chief Judge, SCIRICA and McKEE, Circuit Judges

(Filed: February 19, 2026)
_____

OPINION*
_____

CHAGARES, Chief Judge.

        Rutul Jaiswal petitions for review of an order by the Board of Immigration

_____

* This disposition is not an opinion of the full Court and, pursuant to 3d Cir. I.O.P. 5.7, does not constitute binding precedent.

Appeals ("BIA"), which dismissed his appeal from an Immigration Judge's ("IJ") order denying withholding of removal and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

I.[1]

Jaiswal is a native and citizen of India. He entered the United States in 2016 on a visa, which he overstayed. He was taken into immigration custody in September 2022 and was served with a Notice to Appear. He applied for asylum, withholding of removal, and protection under the CAT, claiming to fear persecution and torture in India on account of his religion, political opinion, family membership, and mental health.

Jaiswal testified at his hearing that he suffered physical abuse by his biological father, Govind Patel, at an early age because he did not want to practice Hinduism.[2] The abuse continued until Patel abandoned the family when Jaiswal was five years old.[3] Jaiswal testified that he left his home at around age eleven and resided in a homeless shelter for several years. He later was adopted by another family and changed his name. While in India, Jaiswal became involved in politics. He supports the Congress Party,

---

[1] We write for the parties and therefore recite only those facts pertinent to our decision.
[2] Jaiswal listed his father's name as Anup Jaiswal in his declaration in support of his application for relief. Jaiswal initially claimed persecution on account of his membership in a particular social group ("PSG") of "immediate family members of Anup Jaiswal." Although Jaiswal later explained that his biological father, Govind Patel — not his adoptive father, Anup Jaiswal — had abused him, it appears he never modified this PSG. He has raised no arguments to this Court concerning a PSG of "immediate family members of Anup Jaiswal" and we therefore deem abandoned any claims concerning that PSG. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993).
[3] The abuse by his father was the sole physical harm that Jaiswal claimed to have experienced while in India.

2

which is opposed to the ruling Indian political party. He testified that he did not fear harm for having supported the Congress Party when he lived in India, although his declaration states that he fears future harm on that basis if he were to return.

Jaiswal testified that, at the time of the hearing, he did not practice any religion, although he later submitted evidence that he began practicing Christianity. He expressed a fear of returning to India because his biological family would kill him for not practicing Hinduism.[4] He testified that he is not in contact with his family members, but he described experiencing violence at the hands of his family while he was living in America. Specifically, in 2018, his sister sent her husband and his relatives in the United States to beat Jaiswal for not practicing Hinduism. Those individuals later were arrested for the assault, and Jaiswal testified that the beating was so severe that he suffered injuries causing memory problems. He also testified that he contacted his father to seek help with his immigration issues, and his father disowned him and told him never to return to India.

Jaiswal admitted that he has been arrested 17 times since 2019 for offenses ranging from driving under the influence to trespass to aggravated assault, although it is not clear whether any of the arrests resulted in a conviction. He also acknowledged that he has since been diagnosed with mental health issues including attention deficit

---

[4] Jaiswal's relative, Piyush Patel, testified at the hearing on his behalf. Patel testified that Jaiswal's decision not to practice Hinduism would cause difficulties, but he did not testify that Jaiswal would face physical harm and is not aware of non-Hindus facing persecution or torture for their views. Patel's declaration stated that Jaiswal "would experience great difficulty, and possibly harm, in India for not practicing Hinduism." Administrative Record ("AR") 622.

hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), and bipolar disorder and is receiving treatment.[5]

The IJ issued a decision denying Jaiswal's application for relief. Jaiswal appealed to the BIA. The BIA remanded the matter to the IJ for further findings and analysis. On remand, a new IJ presided. No hearing was held, but Jaiswal submitted supplemental evidence. The IJ issued a new decision, again denying relief. Jaiswal appealed, and the BIA dismissed the appeal. This timely petition for review followed.

## II.[6]

Jaiswal claims that the BIA and IJ erred in a variety of ways. As to withholding of removal, he contends that: (1) substantial evidence does not support the finding that the past harm he experienced in India was not inflicted on account of religion; (2) he established a clear probability of future persecution based on religion, political opinion, and mental health; and (3) his proposed particular social group ("PSG") of "individuals who no longer practice the Hindu religion and were raised in strictly observant families" is cognizable. As to CAT relief, Jaiswal claims that the agency erred by: (1) failing to consider evidence relevant to future torture; and (2) applying the wrong standard of

---

[5] The IJ held a judicial competency inquiry and was satisfied that Jaiswal was competent to proceed but would implement certain safeguards during his hearing, such as requiring counsel to avoid complex or compound questions and any hostile tone in questioning. There is no dispute before this Court concerning Jaiswal's competence or the safeguards put in place by the IJ.

[6] We have jurisdiction to review the final order of removal pursuant to 8 U.S.C. § 1252(a)(1). We review the BIA's decision unless the BIA deferred to or adopted the IJ's analysis. See Calla-Collado v. Att'y Gen., 663 F.3d 680, 683 (3d Cir. 2011).

review.  We first consider his arguments concerning withholding of removal, then address his CAT arguments.[7]

## A.

To qualify for withholding of removal, Jaiswal needed to show that he more likely than not would suffer persecution on account of a protected ground — including religion, political opinion, or membership in a PSG — if he were to be removed to India.  See Gomez-Zulaga v. Att'y Gen., 527 F.3d 330, 340, 348–49 (3d Cir. 2008).  While a showing of past persecution is not required, such a showing would entitle him to a rebuttable presumption that he will face persecution in the future.  See Saban-Cach v. Att'y Gen., 58 F.4th 716, 724 (3d Cir. 2023).  Findings concerning past and future persecution are reviewed under the deferential substantial evidence standard.  Doe v. Att'y Gen., 956 F.3d 135, 140 (3d Cir. 2020).  We therefore will not disturb the findings unless any reasonable adjudicator would be compelled to reach a contrary conclusion.  Id.

## 1.

Jaiswal contests the finding that he did not experience past persecution on account of religion.  Specifically, the BIA found no clear error in the IJ's finding that Jaiswal did not present sufficient evidence of his father's motives for abusing him.  Jaiswal argues

---

[7] The first IJ concluded that Jaiswal's asylum application was untimely and, even if timely, would have been subject to denial as an exercise of discretion.  Jaiswal did not challenge the discretionary determination on appeal to the BIA.  He presents no arguments to this Court concerning either the timeliness determination or the exercise of discretion, so we deem abandoned any challenge to the asylum denial.  See Kost, 1 F.3d at 182.

that the IJ's finding is based on "nothing more than unsupported personal opinion." Jaiswal Br. 20.  We disagree.

The IJ found that Jaiswal's testimony about his memory that his father abused him for not being Hindu was not credible because the abuse occurred over two decades ago, Jaiswal was very young at the time, and Jaiswal suffers from memory problems.  These are "specific, cogent reasons" underlying this aspect of the IJ's credibility assessment. Dia v. Ashcroft, 353 F.3d 228, 249–50 (3d Cir. 2003).  Jaiswal disagrees, claiming that his memory problems were caused by the 2018 assault and are limited to recent events. Yet there is record evidence supporting the IJ's finding that Jaiswal has been struggling with memory issues since childhood.  We therefore see no basis for disturbing the finding that Jaiswal's testimony, without more, was insufficient to establish his father's specific motives for abusing him when he was under five years old.   Because the motive testimony was the only evidentiary support offered as a nexus between the abuse and a protected ground, Jaiswal has not met his heavy burden to show that the evidence was so compelling that no reasonable factfinder could fail to find a nexus.  See Thayalan v. Att'y Gen., 997 F.3d 132, 143 (3d Cir. 2021).

2.

Jaiswal claims that he demonstrated a clear probability of future persecution on account of his religion, political opinion, and mental health.  These claims lack merit.

Religion.  The BIA found no clear error in the IJ's findings that Jaiswal did not establish a clear probability that he would be harmed in India by his family members or by Hindu nationalists on account of his decision not to practice Hinduism.  Jaiswal's

6

family claim focuses primarily on his declaration, in which he stated that his father threatened him with death in 2022 for not being Hindu. The BIA acknowledged this threat and nonetheless determined that there was insufficient evidence of a clear probability of future harm by family members in light of the other evidence of record.[8] This finding is supported by substantial evidence. See Inestroza-Tosta v. Att'y Gen., 105 F.4th 499, 519 n.21 (3d Cir. 2024). The record shows, for instance, that Jaiswal has had minimal contact with his parents since he was very young, and they live on the other side of the country from where Jaiswal would live in India.

The BIA also found insufficient evidence that Jaiswal would face harm by Hindu nationalists, particularly given that he has not come to the attention of Hindu nationalists to date, and that he failed to establish the existence of a pattern or practice of persecution of Christians in India. These findings are supported by substantial evidence. See id. While the agency acknowledged that Jaiswal presented evidence concerning mistreatment of religious minorities in India, the evidence does not compel a conclusion that he met his burden to show that persecution of Christians in India is "systematic, pervasive, or organized." Ghebrehiwot v. Att'y Gen., 467 F.3d 344, 351 (3d Cir. 2006) (citation omitted).

Political Opinion. The BIA upheld the IJ's finding that Jaiswal did not show a clear probability of persecution on account of his political opinion, observing, among

---

[8] Jaiswal also claimed to fear violence at the hands of other family members, but the beating by his sister's family occurred in the United States, not in India, and Jaiswal does not identify any relative in India apart from his father who poses a threat to him.

other things, that Jaiswal experienced no politically-based harm in the past and has not participated in political activism since leaving India. Jaiswal does not dispute that he was never harmed before and has expressed no plans to become politically active in the future, but he claims that conditions in India have deteriorated for Congress Party members and he still "believe[s] in Congress." AR 448. This evidence is not sufficient to compel a conclusion that Jaiswal more likely than not would be persecuted for his Congress Party views. See Long Hao Li v. Att'y Gen., 633 F.3d 136, 141 (3d Cir. 2011).[9]

Mental Health. Jaiswal claims to suffer from mental illnesses including ADHD, PTSD, and bipolar disorder. The BIA acknowledged Jaiswal's belief that he would have difficulties in obtaining treatment for these conditions in India but observed that such difficulties do not rise to the level of persecution. See Chavarria v. Gonzalez, 446 F.3d 508, 518 (3d Cir. 2006) ("[P]ersecution does not encompass all forms of unfair, unjust, or even unlawful treatment."). Jaiswal claims this was error, but he merely reiterates his view that mental healthcare in India is deficient and that there is societal stigma associated with mental illness.[10] Like the BIA, we conclude that these concerns do not

---

[9] Jaiswal also argues that the Congress Party is associated with Islam and that, as a result, he faces danger "as an imputed Muslim due to his involvement with the Congress Party." Jaiswal Br. 49. To the extent Jaiswal claims that he faces persecution on account of an imputed religious belief, this argument appears to be entirely new and was never addressed in any of the IJ or BIA opinions. The claim therefore is not administratively exhausted, and we will not consider it. See Santos-Zacaria v. Garland, 598 U.S. 411, 423 (2023).

[10] Jaiswal also claims that, because he is unlikely to receive proper treatment in India, his symptoms will worsen, and those symptoms will put him at risk of other forms of persecution "as his symptoms interfere with his ability to hide any protected

8

amount to persecution, as they do not constitute "a real threat to life or freedom." Id. (citation omitted). Jaiswal does not identify record evidence compelling a conclusion that he would more likely than not suffer harm amounting to persecution in India on account of his mental health, so his claim fails.

3.

Jaiswal claims membership in a PSG of "[i]ndividuals who no longer practice the Hindu Religion and were raised in strictly observant families." AR 825. The BIA upheld the IJ's determination that the PSG is not cognizable because, among other things, it lacks social distinction.

Social distinction means that the society in question perceives the proposed group as separate or distinct. Radiowala v. Att'y Gen., 930 F.3d 577, 583 (3d Cir. 2019). We review a social distinction finding for substantial evidence. See S.E.R.L. v. Att'y Gen., 894 F.3d 535, 543 (3d Cir. 2018). Jaiswal points out that he submitted articles showing that India has laws designed to punish Christians and Muslims for drawing people away from Hinduism. Nonetheless, the record remains devoid of evidence that Indian society recognizes a socially distinct group of "individuals who no longer practice the Hindu religion and were raised in strictly observant families." AR 825; see S.E.R.L. 894 F.3d at

---

characteristics." Jaiswal Br. 51. The potential risk of other forms of persecution does not amount to persecution on account of his mental health, however, and, as we have already discussed, Jaiswal did not put forth substantial evidence compelling a conclusion that he will suffer any form of persecution.

9

556 ("[S]ocial distinction involves proof of societal views.").  Absent such evidence, we have no basis to disturb the social distinction finding.

B.

For CAT relief, Jaiswal was required to demonstrate that he more likely than not would be tortured if removed to India, and that the torture would occur with the consent or acquiescence of the Indian government.  See Gomez-Zuluaga, 527 F.3d at 349.  In Myrie v. Att'y Gen., our Court set forth two steps for evaluating the likelihood of torture: First, the agency must determine what harm Jaiswal would face if he were to return home, and second, it must consider whether that harm amounts to torture.  855 F.3d 509, 516–17 (3d Cir. 2017).  The prediction about what is likely to happen to Jaiswal upon removal is a finding of fact subject to substantial evidence review, while the assessment of whether what is likely to happen amounts to torture is a legal conclusion that is reviewed de novo.  Id.

1.

To establish a likelihood of torture, Jaiswal bore the burden to show that the aggregate torture risk he faces is greater than fifty percent.  See Herrow v. Att'y Gen., 93 F.4th 107, 113 (3d Cir. 2024).  Jaiswal claims that the IJ erred by failing to consider all record evidence relevant to the possibility of future torture, including threats by family members other than his father, evidence of mistreatment of Christians in India, political opinion and mental health.  He contends that, aggregating all these sources, he met his burden to show that he faces a greater than fifty percent probability of torture in India.

10

The BIA considered Jaiswal's claim and rejected it.  Substantial evidence supports the finding.  Considering cumulatively all proffered sources of potential torture, the evidence does not compel a conclusion that any reasonable adjudicator would agree that Jaiswal would more likely than not face torture if removed to India.  See 8 U.S.C. § 1252(b)(4)(B).

2.

Jaiswal argues that the agency applied an incorrect legal standard in considering his CAT claim.  We disagree.  Jaiswal correctly observes that, under Myrie, a CAT analysis includes factual consideration of what would likely happen upon removal and legal consideration of whether that harm rises to the level of torture.  855 F.3d at 516–17.  He claims that the agency erred by failing to conduct the second step of the Myrie inquiry.  But the IJ and BIA disposed of the claim at Myrie step one — on the basis that, as a factual matter, Jaiswal failed to show a greater than fifty percent likelihood of experiencing harm if he were to be removed to India.  It therefore was unnecessary to proceed to the second step of the Myrie inquiry.

III.

For the foregoing reasons, we will deny the petition for review.